James BARHAM, Appellant,

v.

STATE of Indiana, Appellee.

No. 782S265.

Supreme Court of Indiana.

Oct. 4, 1983.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant James Barham was convicted by a jury in the Elkhart Superior Court of class B felony criminal confinement, class A felony attempted child molesting and class C felony battery. The trial court subsequently sentenced Appellant to imprisonment terms of ten years for confinement, thirty years for attempted child molesting and five years for battery. Said sentences were ordered to be served consecutively. Appellant now directly appeals and raises the following two issues for our review:

1. whether the verdicts were supported by sufficient evidence; and

2. whether the trial court erred by imposing consecutive sentences.

I

In the instant case, Appellant contends that the State failed to prove by substantial and probative evidence that he committed the crimes for which he was convicted. The record reveals that on August 17, 1981, thirteen-year-old Tonya S. went to Appellant's apartment with fourteen-year-old Hope H. because Hope wanted to talk with Appellant. Tonya previously had been introduced to Appellant by her cousin's eighteen-year-old boyfriend. Appellant's apartment was located approximately one and one-half blocks from where Tonya then lived. After Hope talked with Appellant for awhile, the two girls left. Later that same day, Tonya returned to Appellant's apartment with her infant brother to retrieve her bicycle which Hope had borrowed. Two men were at the apartment drinking and listening to loud music. When Tonya asked where Hope was, the men indicated that Hope was with Appellant in the bedroom. Tonya banged on the bedroom door and told Hope to come out or else she would get Hope's mother. Hope finally came out and the two girls left. When leaving Appellant's apartment, Tonya called Appellant names. Still later that same day, Tonya returned to Appellant's apartment to apologize for "shooting [her] mouth off." Appellant's door was open and Appellant and another man, John "Junior" Brown, were picking up broken glass from the floor. Tonya entered the apartment and apologized. She also informed Appellant that Hope told her on their way home that Appellant raped her. Appellant locked the door and picked Tonya up. She screamed and tried to get away but Appellant took her into his bedroom and threw her onto a mattress. Appellant then told her to be quiet and to remove her clothes or else he would kill her. He put his hands over her mouth. When Tonya refused to take off her clothes, Appellant momentarily left the room to obtain a butcher knife. Appellant held the knife to Tonya's throat. He scratched her neck. Tonya removed her shorts and underwear and Appellant took off his clothes. Tonya testified: "He said that if he was going to get the blame for raping me; that he would get his money's worth." Appellant began stroking Tonya's arms with the knife and cut her in several places. He also scraped the knife over her legs and again cut her. Appellant then started to kiss her but was interrupted when Brown came into the room and told Appellant to either release Tonya or take her to Brown's apartment since Appellant's "old lady" was due to arrive from work. Appellant told Brown to leave him alone which Brown did. Appellant then sat on Tonya's chest and tried to get Tonya to perform fellatio on him but she refused. Tonya testified that Appellant next forced her to have intercourse with him; she did not know whether Appellant ejaculated. Brown returned to the room and Appellant left. After Brown got on

top of Tonya, there was a knock on the outside door. Appellant and Brown both surmised that Yolanda Gray, Appellant's "old lady" and live-in companion, was at the door so they kept it shut. Gray walked around the apartment building to obtain access by way of a window. When Gray opened a bedroom window, she saw Tonya lying on Appellant's mattress. Gray testified as follows:

"Well, she seen me open the window, so she started screaming . . . and she got up and put on her clothes and her bottom clothes and she came to the window and she said thank you, thank you for coming, they were trying to rape me and she jumped out of the window and I asked her where was [Appellant] and she said [Appellant] was in the living room and so we walked around some more and she said one of them had a knife around her throat . . . so at that time I went inside the building and was on my way down the stairs and [Brown] passed me and started running and called after the girl asking her to come back and at that point I was at my apartment door and [Appellant] was standing at the apartment door and his pants were unfastened and unzipped . . . and at that point he grabbed me and started choking me and I smacked his face and he smacked me back and we started fighting."

Tonya ran to a nearby residence and called the police to tell them that she had been raped and needed assistance. When the police arrived, Tonya directed them to Appellant's apartment where they found Appellant, several knives and Yolanda Gray who appeared to have been in a fight. Tonya went to a hospital and then to the police station where she made a statement and pictures were taken of her wounds.

When the sufficiency of certain evidence is challenged on review, this Court will neither weigh that evidence nor determine the credibility of witnesses. We will, instead, consider only the evidence and all reasonable inferences therefrom most favorable to the State to determine whether there was substantial evidence of probative value from which the trier of fact might reasonably have inferred an appellant's guilt beyond a reasonable doubt. *Smith v. State,* (1982) Ind., 419 N.E.2d 743. Moreover, a conviction for a crime can be sustained solely on the basis of the victim's uncorroborated testimony. *Munsey v. State,* (1981) Ind., 421 N.E.2d 1115. Having carefully considered the trial transcript in this case, we find substantial evidence of probative value to support an inference of guilt beyond a reasonable doubt with respect to each of Appellant's convictions. Appellant's convictions therefore will not be reversed.

## II

The trial court sentenced Appellant to ten years for his class B felony conviction, thirty years for his class A felony conviction and five years for his class C felony conviction. Said sentences were the presumptive penalties provided by statute. Ind.Code §§ 35–50–2–5 (Burns 1979), 35–50–2–4 (Burns 1979), 35–50–2–6 (Burns 1979). Notwithstanding its imposition of presumptive terms, the trial court aggravated Appellant's punishment by ordering that his three sentences be served consecutive to one another. Of course, the trial court has the authority to decide whether terms of imprisonment shall be served consecutively or concurrently subject to certain narrow statutory limitations. Ind.Code § 35–50–1–2 (Burns 1979). Appellant now contends that his consecutive sentences are unreasonable and illegal since not warranted by any proper aggravating circumstances. We do not agree.

The original findings in this action did not clearly set out the trial court's reasons for imposing consecutive sentences upon Appellant. Accordingly, we *sua sponte* remanded this case to the trial court and

ordered the trial court to make a more precise statement of its reasons for imposing consecutive sentences. On September 13, 1983, the trial court responded to our Order and filed its *nunc pro tunc* entry in the Record. Said entry reads in part as follows:

"Court further considered that each of the three offenses was committed while armed with a deadly weapon and that they certainly had potential for serious bodily harm. Court further finds that there were no substantial grounds which tended to justify or excuse any of the crimes and the Court cannot say that under the circumstances the same would not be likely to recur.

The Court further found that the defendant did have some prior criminal record in that he had a conviction in 1981 for driving under the influence and a conviction in 1981 for public intoxication, battery on a police officer and resisting arrest, albeit the Court did not place too great an emphasis on any of these past criminal acts.

Court does believe that these factors disclose that the defendant is in need of long-term rehabilitation and correctional treatment and the imposition of a lesser sentence would have depreciated the seriousness of the crime. For these reasons the Court chose to impose the presumptive sentence in each of the three cases and to make the sentences run consecutively."

By disclosing these reasons, the trial court fully complied with our Order and provided us with the Record necessary for purposes of our review.

Our scope of review pertaining to sentencing is established and defined in Rule 2 of the Indiana Rules for the Appellate Review of Sentences. Rule 2(1) directs that we "will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Rule 2(2) states that "a sentence is not manifestly unreasonable unless no reasona-

ble person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." The Record reflects that Appellant confined, attempted to molest and battered the minor victim in a vicious way. This Court therefore finds that the trial court's imposition of consecutive sentences is not manifestly unreasonable in light of the nature of the offenses and the character of the offender.

The judgment of the trial court is affirmed in all respects.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.