**John A. SMITH, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1285S535.**

Supreme Court of Indiana.

Aug. 24, 1987.

Susan K. Carpenter, Public Defender, Vickie Yaser, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal following denial of a petition for post-conviction relief. Appellant's murder conviction was upheld on di-

rect appeal in *Smith v. State* (1981), 275 Ind. 642, 419 N.E.2d 743.

There are two issues presented for review: (1) whether appellant's trial attorney provided ineffective assistance of counsel; and (2) whether newly discovered evidence requires a new trial.

Testimony in the trial court revealed that appellant was acquainted with Marvin Foster and Kalvyn Collins and was often seen in their company. Foster and Collins lived together in a basement apartment of a house leased by Collins's mother. Collins's two year old daughter also resided with them.

On August 18, 1978, Foster, Collins and her daughter were all asleep in one bed when Collins was awakened by a scream and observed Foster and appellant struggling. Foster collapsed, appellant fled and Collins ran upstairs to her mother's bedroom. By the time police arrived, Foster was dead as a result of numerous stab wounds.

■ In support of his claim that his trial counsel was ineffective, appellant presents the following:

(A) counsel's failure to investigate and/or utilize police and hospital reports;

(B) counsel's failure to investigate and/or present evidence of Collins's negative reputation for truth and veracity;

(C) counsel's failure to investigate and/or present alibi evidence;

(D) counsel's failure to object to portions of Collins's testimony concerning prior misconduct by appellant;

(E) counsel's failure to utilize prior statements made by Collins to impeach Collins's testimony;

(F) counsel's failure to object on the grounds of lack of foundation to Collins's testimony relating a threat by appellant against Foster;

(G) counsel's failure to utilize prior statements of police officers involved to impeach their credibility;

(H) counsel's failure to object to Collins's mother's testimony concerning prior misconduct by appellant; and

(I) counsel's failure to object to hearsay testimony.

Trial counsel testified at the post-conviction hearing and generally could shed no light on the allegations of ineffectiveness raised by appellant. Even though he was provided with the trial transcript in order to refresh his recollection prior to the post-conviction hearing, he testified he had only been able to get about half way through the 350 total pages and had no specific recollection of the steps he took in preparing appellant's defense or in formulating his trial strategy.

When a claim of ineffective assistance of counsel is raised, we look to the following:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the convictions or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

*Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. In determining whether prejudice resulted from counsel's errors, the question to be answered is whether there is a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068.

After reviewing each alleged error or omission of appellant's trial counsel, we find that counsel's performance was defi-

cient, that the deficient performance prejudiced appellant and that absent counsel's errors, a reasonable probability exists that a different result may have been obtained.

(A) The only direct evidence connecting appellant with the death of Marvin Foster was the testimony of Kalvyn Collins. At trial, defense counsel questioned her concerning any injuries Foster had sustained in the several months prior to his death. Collins testified that she would have known if Foster had been injured during those months and that he had not been injured or treated at a hospital for an injury shortly before his death. Counsel for appellant also presented Gerald Humphrey, appellant's sister's boyfriend, who testified that one time Foster had shown him some cuts and told him Collins had cut him. Collins testified that early in their relationship she had thrown a dish at Foster and may have cut him. At his post-conviction hearing, appellant introduced a police report and a hospital report from July 1, 1978, approximately six weeks prior to Foster's death. The police report indicated that Foster and Collins were arrested on that date for public intoxication and that Foster was transported to the hospital for treatment of injuries inflicted by Collins. The hospital report reflected that on that date Foster was treated for "multiple superficial lacerations all over body from knife wounds" and that Foster received twelve stitches.

Counsel for appellant admitted at the post-conviction hearing that he was aware that Collins had previously stabbed Foster. When questioned whether he had subpoenaed any medical reports concerning the incident, he stated that he did not recall but that if those documents existed he would certainly have used them. Gerald Humphrey's testimony did not include when he had observed the cuts on Foster, it was only established that it was prior to his death. His testimony did not serve to make the jury aware that six weeks prior to Foster's death Collins had inflicted numerous lacerations upon Foster with a knife, requiring treatment and stitches at a hospital. Collins was the only eyewitness to Foster's death and her credibility would be significantly affected by the fact that she had recently stabbed Foster and her denial under oath of that fact. The police and hospital records were available eight years later, as evidenced by post-conviction counsel's use of those records. They would certainly have been available at the time of trial, had their existence been investigated. The police and hospital reports put Collins's credibility in serious doubt and counsel's failure to present evidence of this incident prejudiced the defense.

■ (B) At the post-conviction hearing, Collins's landlord at the time of the murder testified that Collins's reputation for truth and veracity was "not very good" and that had he been subpoenaed, he would have so testified at trial. Trial counsel did not subpoena the witness post-conviction counsel located or present direct evidence that Collins had a negative reputation for truth and veracity. However, he did attempt to cast doubt on her credibility, albeit with persons related to appellant. Besides Humphrey's testimony that Collins had once cut Foster, Collins's denial of her sexual involvement with appellant was contradicted by two witnesses. The failure to present a witness to directly aver Collins had a poor reputation for truth and veracity was not, standing alone, deficient.

■ (C) Appellant testified at his post-conviction hearing that he only conferred with his trial attorney twice prior to trial and that he provided counsel with the names and addresses of alibi witnesses but that none were utilized at trial. Trial counsel testified he did not recall if he contacted any alibi witnesses. A William Patterson testified at the post-conviction hearing that he drove appellant to the bus station where appellant boarded a bus for Chicago several hours prior to Foster's death. He further testified that Collins had confessed to him that she killed Foster. Patterson revealed that when someone he assumed to be Smith's attorney questioned him, he told him he knew nothing about Smith's case. He also admitted having a rather extensive criminal record.

The record of the proceedings does not reflect that a notice of alibi defense was

ever filed in this case but appellant did testify at trial that he was elsewhere at the time of the crime. Appellant stated that individuals in Chicago would testify that he was in Chicago the night of the murder; however, those witnesses were not presented at the post-conviction hearing. Appellant's testimony that these witnesses were available is not sufficient to overcome his burden of persuasion that counsel was ineffective for failure to present the witnesses. As for the testimony of William Patterson, he testified he believed appellant's counsel attempted to talk with him but that he told counsel he knew nothing of Smith's case. Rather than show counsel was negligent, this testimony reflects he made an effort to corroborate appellant's version of his whereabouts.

(D) Collins was permitted to testify, without objection, to certain prior unrelated acts of misconduct committed by appellant. Specifically, she testified that a physical fight occurred between appellant and a woman named Lucille and also that appellant had previously broken into Collins's house and "messed with" her feet. While the fight between appellant and another woman was clearly unrelated to the present case, the prejudicial impact of the introduction of this event seems minimal at best. The incident where appellant purportedly broke into Collins's apartment and "messed with" her feet is much more relevant. It places appellant breaking in the apartment, at night, for rather subversive purposes. The court may have permitted the testimony under an exception to the general rule on admissibility of prior bad acts on the basis that this behavior was evidence of motive or intent. However, trial counsel did not force the prosecutor to demonstrate the relevance or the admissibility of this testimony. Failure to object very probably prejudiced appellant, but that prejudice was not insurmountable.

(E) Collins, while describing the events of the day preceding Foster's death in a prior recorded statement, related that on two different occasions that day she and Foster "had some wine". At trial she testified that she consumed only ½ glass of an alcoholic beverage that day. Counsel did not draw this discrepancy to the attention of the jury. Obviously Collins's perception of events could be altered due to intoxication. Alerting the jury to this discrepancy in her testimony might have damaged her credibility in the eyes of the jury. However, the prior statements only indicate that they had "some wine" that day. This statement is not necessarily incompatible with Collins's trial testimony. "Some" wine to Collins may be ½ glass. It may have strengthened appellant's defense to alert the jury to her inconsistancies, but doing so was not vital to the outcome of the trial.

(F) The following exchange took place on direct exam of Collins:

Q. They had had some arguments before, is that correct?

A. Yes.

Q. Do you remember when one of those fights was? Do you recall?

A. No, I don't even know what it was about.

Q. Do you remember what happened during that argument?

A. Yes.

Q. What happened?

A. They were arguing and John [appellant] went across the street and they were getting ready to fight and Marvin kept telling him to come on but John just went on across the street and told somebody "I'll kill you, you mother fucker" and went on down the alley.

This narrative is typical of the majority of Collins's testimony. Here, no time frame was established for this occurrence and neither the location nor persons present were identified. Generally, threats made to a homocide victim by the accused are admissible. *Romine v. State* (1983), Ind., 455 N.E.2d 911; *Moore v. State* (1981), 275 Ind. 39, 414 N.E.2d 558; *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158. However, a foundation is necessary to ensure reliability. No objection was made here. The threat could have occurred several years prior to the murder. Its relation

to this case was not established and was inherently prejudicial to appellant.

 (G) Sgt. Harry Dunn testified that while he was transporting appellant from Chicago to Indianapolis he overheard a conversation between appellant and Sgt. McCoy wherein appellant admitted he had stabbed "the subject". Sgt. McCoy testified that appellant told him that he did kill "the man". At a hearing on a motion to suppress this statement, McCoy testified that appellant made this statement to Sgt. Dunn rather than to himself. Counsel did not use McCoy's testimony from the suppression hearing to attempt to impeach McCoy. The admission by appellant was obviously prejudicial to his defense. Pointing out that McCoy previously testified appellant made the statement while conversing with Dunn could have weakened the effect of the testimony, if only by inferring that since the officers didn't remember which one appellant was speaking with, their recollection of what exactly appellant said might also be incorrect. The confession was damaging and since it was an oral confession, showing discrepancies in the officers's testimony could be of benefit to appellant. Standing alone though, the failure to explore this tactic does not amount to ineffective assistance of counsel.

(H) Collins's mother, Flora Ruffin, testified concerning a time appellant was at her house drunk, refused to leave and was removed from the house by a roomer. She also testified about a fight between appellant and a woman which resulted in a window in her house being broken. As discussed in (D), if described in more detail and with the appropriate foundation, these incidents might have been admissible, but counsel's failure to require the State to demonstrate or prove their relevance and admissibility did prejudice appellant's defense to some extent.

(I) Ruffin was also permitted to testify as follows concerning the night of the murder:

"Before, after I was upstairs, John [appellant] was at the house on the outside, 'cause he was calling Bob and Bob was in the room 'cause Bob and I talked.

I said "Somebody is out there calling you" and he said "It ain't nobody but John and he's drunk." He said "I don't want to be bothered with him no more."

"Bob" [Robert Ward] was a roomer in the house at the time Foster was killed. He was not present in court nor available for cross-examination. Counsel did not object to this hearsay testimony. This hearsay is the only direct evidence placing appellant at the scene that night besides the testimony of Collins. The prejudice from its admission is apparent.

In a recent opinion, Chief Justice Shepard noted the following:

"It is the compilation of errors and omissions by counsel which creates the necessity for reversal in this case. Counsel's failure to interview eyewitnesses to the crime, standing alone, does not constitute ineffective representation. *Crisp v. State* (1979), [271] Ind. [534], 394 N.E.2d 115. Counsel's failure to subpoena witnesses or present their testimony also may not violate the Sixth Amendment. *McCann v. State* (1983), Ind., 446 N.E.2d 1293; *Roberts v. State* (1981), Ind.App., 419 N.E.2d 803. However, while each error of counsel individually may not be sufficient to prove ineffective representation, an accumulation of such failures may amount to ineffective assistance. *Shull v. State* (1981), Ind.App., 421 N.E.2d 1."

*Williams v. State* (1987), Ind., 508 N.E.2d 1264.

In the case before us the accumulation of errors mandates a finding of ineffective assistance. Marvin Foster was stabbed to death with a knife. The only eyewitness to the murder, Kalvyn Collins, less than six weeks before, had stabbed Foster several times with a knife during an argument. The jury never learned this fact, despite defense counsels's awareness of the incident. The police report from that incident indicated both Foster and Collins were intoxicated, apparently from drinking Richard's Wild Irish Rose. In pre-trial statements, Collins indicated that twice during the hours preceding the murder she and Foster had "drunk some wine." At trial,

Collins claims to have only consumed one half of an alcoholic beverage. The jury never heard Collins's earlier version of the amount of alcohol she consumed. Collins's mother was permitted to testify that a roomer in her house identified a voice outside the house shortly before Foster was killed as that of appellant. The roomer who purportedly identified appellant's voice was not present at trial. The jury should not have heard this testimony placing appellant at the scene of the crime. The jury also heard about a fight appellant had with a woman, about his being drunk and thrown out of the house and about his breaking into Collins's home at one time to "mess with" her feet. These incidents had no relevance to the charge facing appellant. Collins testified about a threat where appellant said "I'm going to kill you", apparently referring to Foster. She couldn't remember when this was or the circumstances surrounding it, only the threat. Police officers contradicted each other as to which one of them appellant confessed to. The jury only heard the version where their stories were compatible. Appellant testified at trial that he was in Chicago at the time of the murder. No other witnesses testified that appellant was in Chicago.

Trial counsel testified at the post-conviction hearing that he did not recall what steps he took to prepare appellant's defense. He did not recall if he interviewed witnesses or checked out appellant's alibi. He testified that if there were police and hospital reports verifying the fact that Collins had stabbed Foster six weeks before his death, he certainly would have used them. Those reports existed.

The errors and omissions made by trial counsel lead to the unerring conclusion that appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment. We note that the record reflects counsel had only become a public defender a few weeks prior to appellant's trial and resigned shortly thereafter due to an overbearing caseload. The reversal of this conviction may not have come about so much from an individual performance as from a flaw in the system maintained to provide legal counsel to those unable to meet the expense on their own.

The judgment of the post-conviction court is reversed and the cause is remanded to the post-conviction court with instructions to grant the petition for post-conviction relief, set aside the conviction, and order a new trial.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.