**Issac PARSLEY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 53S00–8809–CR–830.

Supreme Court of Indiana.

Aug. 15, 1990.

Amended Aug. 20, 1990.

Lisa A. Farnsworth, Deputy Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Issac Parsley was tried before a jury and convicted of armed robbery, a class B felony, Ind.Code § 35–42–5–1 (West 1986). The trial court sentenced him to twenty years imprisonment. Parsley appeals and we affirm.

Parsley raises two issues on appeal:

I. Whether the trial court erred when it admitted evidence of a pre-trial lineup and in-court identification because the lineup was impermissibly suggestive and there was no independent basis for the in-court identification.

II. Whether the evidence was sufficient to support the conviction.

The evidence at trial described a robbery at the Bloomington Liquor store on September 4, 1986, at approximately 10 p.m. The only witness to the crime was the store's salesclerk, Doug Lawrence. He observed the robber enter the store, proceed to the beer cooler, pace the length of the cooler once, and select a single bottle of imported beer. The robber then brought the beer to the cash register counter where Lawrence worked. Lawrence did not know the price of the item, so the robber returned to the beer cooler, which was ten feet from the counter. By that time, Lawrence found the price and called the robber back to the register.

While Lawrence was ringing up the sale and opening the cash drawer, the robber produced a gun and said, "I'm going to shoot you." Lawrence raised his hands in the air. The robber told him to put his

hands down and place all of the money in one of the store's sacks. When Lawrence selected the wrong sized sack, the robber told him that he would shoot him if he "messed up again." After Lawrence placed approximately $1,923 in the sack, the robber ordered him to go to the store's backroom. Lawrence quickly complied. At trial, Lawrence estimated that the total time he viewed the robber was about one to one and a half minutes.

When police officers arrived on the scene later that night, Lawrence described the robber as being 5'11" to 6' tall, in his late 30's, with greasy, unwashed blond hair. He also said the robber was wearing a dirty baseball cap, and had not shaved for several days. At the time of the robbery, Parsley was 44 years old, 5'8" tall, and had brown hair.

The day after the robbery, Lawrence went to the police station and looked at approximately 50 photographs in the mug books. When Lawrence saw a photograph of Michael Lee Stone, he shook and said that "this man is very similar" to the robber. Stone resembled the initial description given by Lawrence. When asked at trial why the photograph of Stone made him shake, Lawrence replied that the whole evening upset him. He also noted that Stone and the robber bore a resemblance to each other in the eyes, brow, and skull shape.

On October 27th, the police showed Lawrence five photographs. These included a picture of Parsley but not one of Stone. Lawrence did not make a positive identification of Parsley at this time. He testified at trial that he had believed then that Parsley was probably the robber but did not want to make a positive identification based on a photograph.

On November 10th, at 7 p.m., Lawrence positively identified Parsley in a lineup. Sometime during the morning hours on the day of the lineup, the Bloomington Police Department left a message for Parsley's attorney informing him of the scheduled lineup, but counsel did not attend. The lineup consisted of Parsley and four other white males with dress, build and body structure similar to Parsley's. Parsley was the only participant whose photograph had been previously shown to the witness, and his face had noticably more razor stubble than the other participants. Each wore a baseball cap as the robber had, and when asked, each removed the baseball cap and returned it to his head. The witness noticed that the appellant was the only one in the lineup to place it on his head exactly as the robber had. The witness without conversing to the police officers then marked the lineup card identifying the appellant.

Parsley filed a motion before trial to suppress evidence of the lineup and to prevent Lawrence from identifying him at trial. Judge Kenneth G. Todd viewed a videotape of the lineup during a hearing on the motion and concluded that "the lineup procedure in this case was not of the suggestive nature that requires its suppression, and the motion to suppress ... is denied."

### Identification Procedures

Parsley alleges that the trial court erred in denying his motion to suppress evidence of the pre-trial lineup and Lawrence's in-court identification. He claims the lineup was so impermissibly suggestive that it gave rise to a substantial likelihood of misidentification, and thus taints the witnesses' in-court identification.

■ The standard governing admissibility of an identification is whether under the totality of the circumstances, the identification procedure was so impermissibly suggestive that it gives rise to a very substantial likelihood of misidentification. *See, e.g., Alexander v. State* (1983), Ind., 449 N.E.2d 1068; *Hazzard v. State* (1980), 274 Ind. 679, 413 N.E.2d 895. Parsley alleges that several incidents show that the lineup was impermissibly suggestive.

■ First of all, Parsley argues that neither he nor any other participants matched Lawrence's initial description of the robber. While discrepancies do exist between the lineup participants as a whole and the initial description of the perpetrator, the lineup parties did generally resemble each other. The age range of the group was be-

tween 38 to 46 years old. Parsley was 44 years old at the time. Two out of the six lineup participants were Parsley's exact height, 5′8″, and all in the lineup wore the same style of clothing and baseball caps.

Both Parsley's argument and the facts of this case resemble the case of *Gillie v. State* (1984), Ind. 465 N.E.2d 1380. Gillie, like Parsley, argued that discrepancies between the appearance of the lineup participants and the witnesses' initial description of the robber tainted the identification. In rejecting Gillie's argument, we noted that this sort of discrepancy reflected on the credibility of the witness and not on the admissibility of the identification. We conclude here as we did there that when the individuals in a lineup resemble each other the fact that the witness' initial description was somewhat different does not suggest to the witness which of the people in the lineup he should identify.

Lawrence testified that he knew Parsley was the one when he saw him enter the lineup. As best as we can tell, he knew that because he recognized him from the robbery.

■ Parsley's strongest argument concerns possible suggestiveness in the lineup because Parsley had more facial hair than the other participants. Several days growth of beard was part of the initial description and could have unduly directed the witness's attention only at Parsley. However, the witness stated that "comparatively speaking" to Parsley the others were cleanshaven. He elaborated on this statement to mean that several of the participants appeared not to have not shaven recently. Parsley simply appeared to have shaven less recently than many of the others. Because Parsley was not the only individual with facial hair, this argument does not avail.

■ Second, Parsley argues that the omission of Stone from the lineup was suggestive. He notes that in the first photographic array Lawrence appeared to be physically unnerved at the sight of Stone's photograph. At the second photographic array, Stone's photograph was omitted, and Parsley's picture was added. Though po-

lice attempted to find Stone for the lineup, they failed to locate him at three possible addresses.

■ A lineup which includes someone earlier identified from photographs is not rendered impermissibly suggestive so long as there is no suggestion to the identifying witness that the individual selected by the photograph would be in the lineup. *Little v. State* (1985), Ind., 475 N.E.2d 677, 682, (citing *Woodson v. State* (1984), Ind., 460 N.E.2d 970). In this case, the witness was not told before or after the lineup that he had previously been shown Parsley's photograph or that the appellant would appear in the lineup. Indeed, Lawrence did not even previously identify Parsley's photograph. He also stated on the stand that he did not realize that he had seen Parsley's photograph until after the lineup occurred when he reflected on the events of the day. These facts do not imply suggestiveness giving rise to misidentification.

As for Stone not being in the lineup, while we commend the effort to find him as a matter of fairness, we think his absence did nothing to suggest to Lawrence that he should pick Parsley from a group of people who resembled each other.

The pretrial identification procedures were not so impermissively suggestive as to give rise to a substantial likelihood of mistaken identification. Judge Todd properly denied the defendant's motion to suppress.

### Right to Counsel

■ Parsley also challenges the propriety of the lineup because he was not represented by counsel at the lineup. This issue has already been decided by both the U.S. Supreme Court and this Court. The defendant has no right to counsel until adversary judicial proceedings have been initiated against him. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *accord Bray v. State* (1982), Ind., 443 N.E.2d 310.

In Indiana, criminal proceedings begin with the filing of an indictment or information by the prosecuting attorney. Ind.Code

§ 35–34–1–1 (West 1986). In this case, the lineup occurred on November 10, 1986, and the prosecutor filed the information against Parsley on November 13, 1986. Parsley was not entitled to counsel at the lineup.

### Sufficiency of the Evidence

 Appellant finally claims that since the sole witness to the crime viewed a suggestive lineup which tainted his identification in court, there is insufficient evidence to support a conviction. However, because we upheld the trial judge's decisions on allowing into evidence the lineup and in-court identification, Parsley's argument must fail.

This Court does not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Rather, we look to the evidence and the reasonable inferences therefrom which support the verdict of the Jury. If there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt, then the conviction must be affirmed. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115, 1117 (citing *Smith v. State* (1981), 275 Ind. 642, 419 N.E.2d 743).

In addition, the unequivocal identification of the defendant by the victim in court, despite discrepancies between his description of the perpetrator and the appearance of the defendant, is sufficient to support the conviction. *Young v. State* (1986), Ind., 493 N.E.2d 455, 457 (citing *Killion v. State* (1984), Ind., 464 N.E.2d 920).

The State's only eyewitness to the robbery was Lawrence, and there were some discrepancies between his initial description of the perpetrator and Parsley's actual appearance. Lawrence identified Parsley twice as the robber, however, without hesitation or lack of assuredness. When someone whom a clerk has observed for several moments in a well lighted store aims a gun at the clerk's head and threatens to shoot him, odds are that the clerk will pay more attention to this individual than he would have paid to the average customer. The

evidence is sufficient to support a conviction.

Judgment affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.