Rickey Lee VAUGHN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8811–PC–931.

Supreme Court of Indiana.

Sept. 19, 1990.

Susan K. Carpenter, Public Defender, John Pinnow, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

This is an appeal from the denial of post-conviction relief. In 1976, appellant was convicted of two counts of Second Degree Murder. The trial court sentenced appellant to two life terms. This court affirmed the convictions and ordered that one of the life sentences be vacated. *Vaughn v. State* (1978), 269 Ind. 142, 378 N.E.2d 859. In 1978, the trial court vacated one of the life sentences.

Following a hearing on this petition, the trial court made thorough findings of fact and conclusions of law and denied post-conviction relief.

Appellant contends he was denied the effective assistance of pretrial and trial counsel in violation of the Sixth and Fourteenth Amendments. This Court in *Aubrey v. State* (1985), Ind., 478 N.E.2d 70, discussed the standard of review for effective assistance of counsel. *See also Schiro v. State* (1989), Ind., 533 N.E.2d 1201, *cert. denied,* — U.S. —, 110 S.Ct. 268, 107 L.Ed.2d 218. We will examine each of the alleged inadequacies under the two-part test in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Many of appellant's arguments center upon prejudicial publicity. Appellant relies on *Irvin v. Dowd* (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; *Sheppard v. Maxwell* (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; and *Callahan v. Lash* (N.D.Ind.1974), 381 F.Supp. 827 to support his argument.

In *Irvin,* six murders were committed in late 1954 and early 1955 in Evansville, Indiana. Throughout this time period, the news media extensively covered the crimes and aroused great excitement and indignation throughout Vanderburgh County. Police arrested the defendant in April of 1955 and issued press releases which were extensively publicized, stating defendant had confessed to the six murders. Defendant was indicted for murder and his case was venued to an adjoining county. He was eventually tried in that county after a second change of venue motion was denied. The United States Supreme Court reversed finding that the publicity was so intense covering the crimes that even after the trial was moved to an adjoining county, it proved impossible to select an impartial jury. In fact, eight of the twelve jurors finally selected stated that they thought

the defendant was guilty even before the presentation of the evidence.

In *Sheppard,* the defendant was convicted of murdering his pregnant wife. Immediately after the murder, the news media covered the story. From early July until November daily articles appeared in the newspaper regarding the crime and daily editorials also appeared. These articles implied the defendant's guilt with titles like "Quit Stalling—Bring Him In," "Why Isn't Sam Sheppard in Jail?" and "DR. SAM: 'I Wish There Was Something I Could Get Off My Chest—But There Isn't.'" During trial, the courtroom was packed with media inside the bar of the court to the point that defendant and his counsel could not speak privately at counsel table. The United States Supreme Court reversed the denial of the petition for *habeas corpus* and found that the trial judge did not fulfill his duty to protect the defendant from the inherently prejudicial publicity which saturated the community and to control the disruptive influences in the courtroom.

In *Callahan,* the defendant was convicted of murdering Officer Edward Byrne of the Marion County Sheriff's staff. This crime was the subject of many news stories including headlines, editorials, and pictures during the several days following the murder. In fact, within the two week period following the murder, there were 118 news articles published. During the next eight months, there were a total of thirteen articles. The Court in reviewing the articles indicated that standing alone they would not support a claim of a denial of procedural due process. However, when viewed as a part of the totality of circumstances surrounding the trial, they became quite another matter. The Court found that the trial court took on the atmosphere of a circus by allowing media to roam the courtroom at will, allowing television cameras in the courtroom, and allowing the names and addresses of the jurors published.

In the instant case, the record reveals that on October 22, 1974, about 1:15 p.m., Leslie Corrie, an armored car driver, observed a police officer and a man identified as appellant at the side of a Cadillac on North College Avenue. Mr. Corrie testified that the officer was backing away with his hands up while the appellant shoved him back two or three times. Appellant then shot the officer and fled. The next day the Indianapolis newspapers reported that appellant had been identified as the suspect. A search for appellant ensued, but he was not apprehended until June 28, 1975.

Appellant argues that as a result of the publicity surrounding the case, the jury was unduly influenced. In support of his argument, appellant claims prejudicial publicity resulted from the media covering the crime and reports of the fatal shooting of Indianapolis Police Officer James Compton on March 16, 1976, just a few weeks prior to appellant's trial.

There were 78 articles pertaining to the crime with 22 of them appearing on the front page. There were 44 articles with appellant's name in the headline and 17 articles with appellant's picture. Although most jurors were exposed to the pretrial publicity, most stated that they had no opinion about whether appellant was guilty or innocent. Although there was a lot of coverage surrounding this crime, we find that the media coverage is of a normal nature and does not exceed the bounds of propriety found in the cases above.

Appellant nowhere in his brief has shown that the trial court proceeded in an atmosphere of circus and hysteria as in *Irvin, Sheppard,* and *Callahan.* In fact, appellant's contention rests purely on the publicity. We also note that appellant wanted the case to be tried in Marion County and did not request a change of venue because he had grown up in Marion County and felt that he could receive a fair trial there. Appellant's claim that trial counsel was ineffective because they did not persist in requesting a continuance based on the continuing high level of pretrial publicity is without merit. We cannot say that trial counsel was ineffective under the two-part test in *Strickland.*

■ Appellant contends that counsel was ineffective for failing to preserve alleged errors made by the court during *voir dire.*

The record reveals that one of the jurors, Patricia Gull, happened to be on the panel of prospective jurors when another prospective juror, Violet Hill, expressed an opinion that appellant was guilty. After the trial judge excused that juror, he queried the persons seated in the box as to whether they had been affected by what they had heard, and upon being satisfied that they had not, he denied the defense motion to strike the panel. Appellant has not shown that the trial judge's actions were erroneous; thus there is no showing that trial counsel was ineffective at this point. In addition, we note that appellant did not exhaust his peremptory challenges; thus there was no error to preserve. *See Collins v. State* (1984), Ind., 464 N.E.2d 1286.

Appellant also contends deficient performance in failing to preserve an alleged ruling denying his challenge for cause of another prospective juror, Patricia Trout, whose brother worked for the Marion County Sheriff's Department. The record reveals that appellant exercised one of his peremptory challenges to remove her, and as indicated above, still had not exhausted his challenges when the jury selection was completed. Appellant relies on *Gray v. Mississippi* (1987), 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622, to avoid the bar created by his failure to exhaust his peremptory challenges. However, a later case, *Ross v. Oklahoma* (1988), 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80, specifically qualified *Gray*, stating that its broad language was too sweeping to be applied literally and that "so long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated." 487 U.S. at 88, 108 S.Ct. at 2278, 101 L.Ed.2d at 90. We find no showing that appellant's right to an impartial jury was violated.

Appellant contends his trial counsel was ineffective for failing to make a record concerning publicity regarding another fatal police officer shooting. However, he has given no reason or cited any evidence that any juror was rendered less than impartial by this publicity. We also find that appellant's claim that the failure to make a record of the publicity in order to support a motion to sequester witnesses and prospective jurors constituted ineffective assistance of counsel is without merit. Appellant has not shown that the denial of those motions resulted in prejudice. He only makes general assumptions. We find no error under the *Strickland* test.

Appellant contends trial counsel's failure to object and preserve prosecutorial misconduct as error resulted in ineffective assistance of counsel. We note at the outset that counsel decided not to object or move for a mistrial because of the prosecutor's misconduct because he did not wish to draw more attention to the prosecutor's comments. Isolated bad tactics or inexperience do not necessarily amount to ineffective assistance of counsel. *Schiro, supra.* We find that counsel's decision not to object or to move for a mistrial was clearly a tactical decision. Appellant also complains of other instances of prosecutorial misconduct. However, the record indicates that the questions were objected to and the court sustained counsel's objections. Appellant fails to show how he was prejudiced. We find no error.

Appellant contends ineffectiveness of counsel for failure to raise as error the State's mishandling of potentially exculpatory evidence. The record reveals that Officer Schachte had a notebook with him when he stopped appellant. It apparently was given to his family. His spouse testified that if she received the notebook, she threw it away. Appellant claims that the notebook might have contained exculpatory evidence and counsel was deficient in not preserving its loss as error.

The United States Supreme Court in *Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 held "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." In the instant case, appellant has not shown bad faith and we fail to find that

trial counsel was deficient for not raising the issue.

■ Appellant contends that his pretrial counsel was ineffective because he participated in a radio interview with appellant. We note that the record indicates that the trial court found that appellant's statements in the pretrial interview were in no way "ordered or orchestrated by attorney Shaw." Likewise, appellant has shown no prejudice. Appellant also contends that counsel was unreasonable regarding an improper letter he wrote, claiming that this letter harmed his attorney-client relationship. Again, appellant merely makes an allegation but shows no resulting prejudice. We find no error.

■ Appellant contends that pretrial counsel was ineffective in that appellant testified that counsel had taken a copy of a grand jury transcript and had not returned it. He now claims that by not having the transcript counsel was not able to effectively cross-examine State's witnesses. The trial court concluded that the alleged loss of the transcript was not prejudicial to petitioner because duplicate transcripts were ordered to be provided to counsel's successors. We agree with the trial court finding.

■ Appellant next contends that counsel did not explain the possibility of seeking a change of venue to a county further away than the counties immediately bordering Marion County. However, we note that appellant chose to stay in Marion County because he wanted to receive a fair and impartial jury. In the instant case, there is no showing that the jury was not impartial or that counsel was ineffective.

■ Appellant further asserts that his counsel failed to raise in the motion to correct error certain claims on state and federal constitutional grounds thus foreclosing a chance to raise such claims in a federal *habeas corpus* proceeding. Appellant relies on *Wainwright v. Sykes* (1977), 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, to support his argument. Appellant lists six issues which he claims should have been raised on constitutional grounds which were raised on other grounds. Appellant's claim then is not in failing to raising the issues, but failure to argue grounds he now thinks, in retrospect, would have been stronger arguments. We find that these claims go to a purely tactical decision on counsel's part. In addition, appellant has not shown that any of such claims would likely prevail in a *habeas corpus* proceeding and absent such a showing, the fact that they may be procedurally defective under *Wainwright* does not constitute prejudice under *Strickland.*

■ Appellant contends that the accumulation of the errors denied him effective assistance of counsel. In support of his argument, appellant relies on *Williams v. State* (1987), Ind., 508 N.E.2d 1264 and *Smith v. State* (1987), Ind., 511 N.E.2d 1042. However, we find that these cases are not comparable to the instant case. We find that counsel was not ineffective in representing appellant.

■ Appellant also makes several claims that his appellate counsel was ineffective. His first claim is that appellate counsel was unreasonable because he failed to submit a complete record of the pretrial and trial proceedings. He contends counsel should have assured that the transcript of final argument and *voir dire* were included in the record. Appellant does not show how the outcome would have been different, and we fail to find support for his argument. Counsel was not ineffective in this regard.

■ Appellant argues that appellate counsel failed to raise and preserve errors on state and federal constitutional grounds. As the State properly indicates in its brief, these issues involve matters of strategy on which this Court will not speculate. *Smith, supra.* Appellant also contends that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on appeal. However, counsel will not be deemed ineffective for failing to present meritless claims. *Hill v. State* (1984), Ind., 462 N.E.2d 1048. Because we found above that trial counsel was not inef-

fective, appellant's contention is without merit.

Appellant contends that counsel failed to raise as fundamental error the errors relied upon as the basis for his claim of ineffectiveness of counsel. Fundamental error is error that if not corrected would deny defendant fundamental due process. *Callahan v. State* (1988), Ind., 527 N.E.2d 1133. We fail to find that appellant successfully could have raised these issues; therefore, counsel was not ineffective in this regard.

Appellant contends that counsel's failure to meet and confer with him constituted unreasonable performance. He argues that counsel's performance was inadequate because he would have told counsel that he wanted all errors preserved and a full record presented to this Court. Counsel was not required to present meritless claims. Appellant's final claim of ineffectiveness involves the cumulative effect of the errors. We find this claim to be without merit in light of the issues discussed above.

Appellant contends that he was denied due process where much of his petition for post-conviction relief claiming ineffective counsel was denied based on waiver of the issues. Appellant claims that in doing so, the trial court did not properly evaluate case law supporting his contention. Although appellant cites numerous cases, these are clearly distinguishable from the instant case. The trial court indicated that even if it properly addressed the issues, it would be unable to grant relief and specifically indicated the reasons for its conclusions. We find no error.

Appellant finally contends that he was denied due process when the court violated the separation of powers doctrine by asking the State to tender proposed findings of fact and conclusions of law. As the State properly indicates, it is commonplace for the court to ask attorneys to submit proposed entries while the responsibility for the final order remains as the court's. We find no error under Ind.R.P.C.R. 1, § 6 as appellant contends.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs with separate opinion.

DeBRULER, Justice, concurring.

The majority quotes with approval the statement in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), that the due process claim for destruction of exculpatory evidence cannot be successfully maintained except upon proof by the accused of bad faith on the part of the police. I continue to be convinced that this requirement is overbroad and inconsistent with the promise of a fundamentally fair criminal trial. *Madison v. State* (1989), Ind., 534 N.E.2d 702, 707 (concurring opinion of DeBruler, J.). Here, the victim had a notebook with him when he was killed. It is nothing short of gross negligence for the personal effects of a murder victim to be lost or given away during the pendency of murder charges. The evidentiary significance of such things is obvious. In such situations, the State should be required to demonstrate that the defense is not burdened by the loss. Here, however, the question arises in the context of a multi-faceted claim of ineffective counsel, and I agree that, in this instance, this claim is properly rejected.