**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 03 2013, 5:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**SUSAN D. RAYL**
**MICHAEL R. SMITH**
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY WATSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1301-PC-92 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel Pfleging, Judge
Cause No. 29D02-0412-FA-167

**December 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Jeffrey Watson appeals the post-conviction court's denial of his petition for post-conviction relief, raising the following issues for our review: (1) whether Watson received ineffective assistance of trial counsel; and (2) whether Watson received ineffective assistance of appellate counsel. Concluding Watson's right to effective assistance of counsel was not violated, we affirm.

## Facts and Procedural History

Many of the facts relevant to Watson's post-conviction relief petition have been previously recounted by this court during Watson's direct appeal:

> Watson and his wife, [Judy], have two daughters, Vi. and Va., and two sons, [Allen] and J. When Va. was nine years old, she had a nightmare and went to sleep with her parents in their bed. She later awoke and found Watson had his fingers in her vagina. Watson took Va. back to her bedroom and again inserted his fingers in her vagina. Then Watson asked Va. to touch his penis, but she refused.
>
> The next night, when Va. was asleep in her room, she again woke to find Watson had his fingers in her vagina. Va. held still because she felt like she could not move, and she acted as though she were still asleep.
>
> On another occasion while Va. was nine years old, she was riding with Watson in his truck. Watson showed her a magazine that had pictures of naked women who were "[t]ouching the[m]selves and touching other girls." Watson asked Va. to touch herself while looking at them. Va. refused.
>
> On several occasions, the children had lice in their hair. Watson would have the girls stand in the shower while he combed the lice out of their hair. Watson touched Va.'s breasts while she was in the shower.
>
> Watson also frequently asked Va. if he could touch her butt. In December 2004, when Va. was 13, she tired of Watson's comments about her butt and decided to tell [Judy] everything that had happened. [Judy] took Va., Vi., and [Allen] out of the home and made a report to the police. J. was picked up from school, and all the children were interviewed at Chaucie's Place. [Judy] and the children moved out of the family home.
>
> That day, Watson went to the police station looking for his family. Watson was informed of the allegations against him, and he made a voluntary statement to the police. Watson denied the allegations and also denied that there was pornography in the home. Police obtained consent to search the home from [Judy], and they found the red crate filled with pornographic magazines under the desk where Va.

said it was. The police also found four pornographic VHS tapes and a DVD. Over 3,300 pornographic images were found on the family's computer.

Ultimately, Watson was charged with four counts of Class A felony child molesting, one count of Class D felony child solicitation, and one count of Class D felony conducting a performance harmful to minors.

After Va.'s allegations came to light, [Judy] and the children lived in several different places, including stays with Va.'s aunt Lisa and aunt Heather. Eventually, [Judy] and the children went to live with Watson's mother. At that time, Watson was living in a trailer on his mother's property, and Va. saw him every day.

During the time Va. was living at her grandmother's house, her parents took her to meet with Watson's counsel. At trial, Va. admitted she told defense counsel "that it was all misunderstood and someone else did it." However, she explained her parents told her to tell defense counsel that nothing had happened. She said she felt scared around her father and felt like she would "rather live on the streets" than with her grandmother. After the meeting with defense counsel, Va. asked her aunt Heather whether she would get in trouble if she changed her story.

Watson's mother and her partner, Joyce, testified on behalf of Watson. Watson's mother testified Va. would "lie when the truth came easier." Joyce testified she believed Va. made her allegations because she "wanted to party and to [party] she had to get rid of her father."

Watson also testified. He admitted he once had a pornography collection, but said he thought he had gotten rid of it. He acknowledged he would comb lice out of the children's hair in the shower. Watson denied ever touching Va. inappropriately.

Watson apparently had intended to call [Judy], [Allen], and J. as witnesses. However, prior to trial and in violation of a court order, Watson allowed them to view the videotape of Va.'s interview at Chaucie's Place. The State discovered this violation when deposing the boys. The State moved to exclude the witnesses as a discovery sanction. The court ruled:

> ... Watson shall be precluded from presenting, at trial, any and all testimony of [J., [Allen], and [Judy]] that has been tainted by the violation of the Protective Order. Watson may voir dire [J., [Allen], and [Judy]] outside the presence of the jury to determine if they have any relevant testimony that has not been tainted by the violation of the Protective Order.

Watson did not conduct *voir dire* of [Judy], [Allen], or J., and none of them testified at trial.

The jury found Watson guilty of two counts of Class A felony child molesting, one count of Class D felony child solicitation, and one count of Class

> D felony conducting a performance harmful to minors. The trial court sentenced him to thirty years on each Class A felony and three years on each Class D felony, with all sentences to be served concurrently.

Watson v. State, No. 29A04-0904-CR-221, slip op. at 1-2 (Ind. Ct. App. Feb. 26, 2010) (citations and footnotes omitted). Watson's convictions were affirmed on direct appeal, but his case was remanded to correct an error in the calculation of credit time. Id. at 7.

Watson filed his petition for post-conviction relief in February 2011 and filed an amended petition in July 2011. Watson's petition claimed ineffective assistance of trial counsel based on the violation of the trial court's protective order[1] and the exclusion of Judy, Allen, and J. as testifying witnesses; counsel's failure to investigate and call additional witnesses; counsel's general failure to develop evidence regarding Va.'s character for truthfulness; counsel's failure to memorialize Va.'s recantation; and counsel's failure to rehabilitate Watson after cross-examination at trial. Watson also alleged ineffective assistance of appellate counsel.

At an evidentiary hearing, the post-conviction court heard testimony from Watson's trial counsel Steve Holt, appellate counsel Amy Higdon, Allen Watson, Heather Landis, Diane Geibel, Jocelyn Landis, and Watson. Holt testified that he had forgotten about the protective order surrounding the videotape of Va.'s interview and did not tell Watson about the protective order when he told Watson to let his family watch the tape. With respect to Judy Watson, Holt said she would have testified as to Va.'s reputation for dishonesty had she not been excluded.

Allen, who was also excluded as a sanction for violating the trial court's protective order, would have testified that Va. had a reputation for dishonesty. He also would have testified he overheard a telephone conversation between Watson and Va. during which Va. said "this is why I did this to you, and because you let Chellis rape me . . . ." Transcript of Post-Conviction Relief Hearing ("PCR Tr.") at 104. During cross-examination, Allen was confronted with inconsistent

---

[1] The trial court's protective order directed that the tape of Va.'s interview "may be viewed only by parties, their counsel and their counsel's employees, investigators and experts . . . ." Appellant's Appendix at 104.

4

statements from a deposition taken prior to Watson's trial. During that deposition, Allen claimed he was not aware of Va. ever recanting her allegations against Watson and that he could not recall Va. ever lying about anything serious.

Had they been permitted to testify at Watson's trial, Heather Landis, Jocelyn Landis, and Diane Geibel would all have testified that Va. had a reputation for dishonesty.

The post-conviction court entered findings of fact and conclusions of law, and it denied Watson's petition, concluding either trial counsel's performance was not deficient or that any error had not prejudiced Watson. Specifically, the post-conviction court concluded the jury would have come to the same conclusion of guilt because evidence had already been presented at trial regarding Va.'s recantation made to Holt and her reputation for dishonesty. The post-conviction court noted that the only new evidence would be Allen's testimony concerning the phone call he overheard between Watson and Va. However, the post-conviction court concluded that Allen's testimony would not be perceived as credible, and thus, its absence from the trial did not prejudice Watson. The post-conviction court also concluded that Watson's appellate counsel was not ineffective.

Watson now appeals the post-conviction court's denial of his petition for post-conviction relief. Additional facts may be provided as necessary.

Discussion and Decision

I.   Standard of Review

A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Indiana Post-Conviction Rule 1(5). A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." Stevens v. State, 770 N.E.2d 739, 745 (Ind. 2002), cert. denied,

5

540 U.S. 830 (2003). We defer to the post-conviction court's factual findings, unless they are clearly erroneous. Id. at 746.

The Sixth Amendment's "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance of counsel, a convicted defendant must show (1) that counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance. Id. at 687. When considering whether counsel's performance was deficient, the reviewing court begins with a "strong presumption" that counsel's performance was reasonable. Id. at 689. A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The two prongs of the Strickland test—performance and prejudice—are independent inquiries, and both prongs need not be addressed if the defendant makes an insufficient showing as to one of them. Id. at 697. For instance, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed" without consideration of whether counsel's performance was deficient. Id.

## II. Assistance of Trial Counsel

Watson argues that he received ineffective assistance of trial counsel based upon numerous alleged deficiencies. He also claims that the cumulative effect of those deficiencies amounts to ineffective assistance of counsel. We will address each of Watson's arguments as to the effectiveness of trial counsel below.

6

## A. Violation of Protective Order and Exclusion of Witnesses

First, Watson contends that the role his trial counsel played in violating the court's protective order and the resulting exclusion of defense witnesses violated Watson's right to effective assistance of counsel. Indeed, it is difficult to imagine how trial counsel's complicity in violating the trial court's protective order could be framed as a reasonable trial strategy or action otherwise reasonable under prevailing professional norms. That said, we side with the post-conviction court in its conclusion that Watson was not prejudiced—at least within the meaning of the Strickland test—by the exclusion of Judy, Allen, and J. as potential defense witnesses.

Initially, we note that the post-conviction court considered only whether Allen's exclusion prejudiced Watson, concluding there was no evidence Judy or J. would have been helpful to Watson at trial. We do not agree with this conclusion, as Holt testified at the post-conviction hearing that Judy would have testified at trial as to Va.'s reputation for dishonesty.

Like Judy, Allen would have testified that Va. had a reputation for dishonesty. In addition, he would have testified to an alleged phone call he overheard between Va. and Watson, during which Va. said "this is why I did this to you, and because you let Chellis rape me . . . ." PCR Tr. at 104. However, at the post-conviction hearing, Allen was confronted with inconsistent statements he made during a pre-trial deposition where he said he was not aware of Va. ever recanting her allegations against Watson and that he was not aware of Va. ever lying about anything serious. The post-conviction court concluded that Allen was not a credible witness and that the jury would have afforded little weight to Allen's testimony. The post-conviction court's determination as to Allen's credibility is entitled to deference. Given Allen's lack of credibility, we do not believe his testimony is sufficient to undermine the outcome of the trial.

With respect to Va.'s reputation for untruthfulness, two defense witnesses—Jo Watson and Joyce Guinnup—testified at Watson's trial as to Va.'s reputation for dishonesty and that they

7

believed Va. was lying about her allegations against Watson. And Watson also testified and maintained his innocence at trial. To the extent that Judy and Allen would have testified as to Va.'s reputation for untruthfulness, their testimony is largely cumulative. "[F]ailure to call a witness whose testimony would be cumulative is not ineffective assistance." Moredock v. State, 540 N.E.2d 1230, 1232 (Ind. 1989).

Watson urges us not to consider Allen and Judy's testimony as merely cumulative, because Va.'s credibility was essential to the State's case against Watson. Watson also contends that exclusion of family members who would testify as to Va.'s dishonesty could create the impression that those members who did not testify were in Va.'s corner, giving the following hypothetical:

> [O]ut of a family of ten, one family member testifies that another family member has a reputation of being a liar, a jury might conclude that eight members of the family who did not give similar testimony do not agree, and might question the judgment of the one witness to [sic] gave the reputation testimony. If eight members of that same family testify that another family member has a reputation of being a liar, those same jurors might still believe that the one family member did not agree, but would likely question the judgment of the one rather than the eight.

Appellant's Brief at 21. While this argument is plausible in the abstract, we do not believe that it applies to the circumstances of this case. For starters, two witnesses testified as to Va.'s dishonesty at trial—in addition to Watson's testimony, which eliminates the sort of doubt that might come along with uncorroborated testimony. And second, Va. admitted on cross-examination that she would not be surprised to hear family members call her a liar, and she testified "my whole family has gone against me, so it doesn't surprise me what they say about me." Transcript at 315. Any possibility of the jury speculating in the way Watson's argument suggests was nullified by Va.'s testimony on cross-examination.

In sum, we agree with the post-conviction court's conclusion that the exclusion of witnesses as a result of violating the trial court's protective order did not prejudice Watson.

8

Therefore, Holt's complicity in violating the protective order does not amount to ineffective assistance of counsel.

## B. Failure to Investigate and Present Additional Witnesses

Second, Watson argues that Holt delivered ineffective assistance by failing to find and present additional witnesses at trial. Those witnesses are Watson's sisters, Heather Landis and Diane Geibel, and his niece, Jocelyn Landis, all of whom would have testified that Va. had a reputation for dishonesty.

Watson also states that Heather Landis and Diane Geibel would have testified that the deputy prosecutor told Va. that she would get in trouble if she attempted to change her story. However, the State argues that this evidence is cumulative of Va.'s testimony on cross-examination, where she admitted to asking Heather Watson whether she would get in trouble if she changed her story. Moreover, the State argues that the evidence would be inadmissible hearsay, and Watson offers no theory of admissibility in his reply brief.

Much like reputation testimony from Judy or Allen, discussed above, reputation testimony from these additional witnesses would be cumulative of testimony given by other defense witnesses and by Va. on cross-examination.[2] Therefore, the absence of this testimony did not prejudice Watson.

## C. Failure to Memorialize Va.'s Recantation

Third, Watson claims that Holt provided ineffective assistance by failing to memorialize statements made by Va. at Holt's office in which Va. recanted her allegations against Watson or to call a witness to testify to the recantation.

---

[2] Watson also argues that additional witnesses testifying as to Va.'s reputation are necessary because one of the two defense witnesses who testified at trial (Jo Watson) was Watson's mother, and thus "[t]he jury may have concluded that [Watson's] mother was more supportive of [Watson] than of [Va.]." Appellant's Br. at 20. We fail to see why the jury would perceive Watson's sisters or niece to be any less biased in favor of Watson.

Once again, this evidence would have been cumulative of evidence already presented at trial. At trial, Va. admitted to going to Holt's office and telling him "that it was all misunderstood and someone else did it." Tr. at 283. Va. also explained that she had gone to Holt's office and recanted because of pressure from her family. The jury was fully aware that Va. had gone to Holt's office and told him that her allegations against Watson were not true. Holt's failure to memorialize her recantation or call a witness to recount her statements did not prejudice Watson, as such evidence would only have been cumulative of Va.'s testimony at trial. See Moredock, 540 N.E.2d at 1232 (failure to present cumulative evidence is not ineffective assistance of counsel).

## D. Failure to Rehabilitate Watson

Fourth, Watson asserts that Holt was ineffective for failing to rehabilitate Watson following the State's cross-examination. Watson believes re-direct examination was necessary to rehabilitate him after a poor performance during cross-examination. He focuses on one particular exchange that occurred during his cross-examination in which he testified that he would not call his children liars:

> [State]: And didn't you also tell [the detective] repeatedly that you would never call your kids liars and specifically that you would not call your daughter a liar?
>
> [Watson]: That's true.
>
> [State]: And that was after he told you what the allegations were?
>
> [Watson]: Yes.

Tr. at 457.

The State argues that Watson's refusal to call Va. a liar would either be perceived by the jury as incriminatory or as a father who refused, as a general matter, to label any of his children liars. We agree and find the latter possibility much more likely. "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision

10

deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." State v. Holmes, 728 N.E.2d 164, 172 (Ind. 2000) (citation omitted), cert. denied, 532 U.S. 1067 (2001). Watson had already testified at trial that he was innocent, and implicit in his testimony is the charge that Va. was lying. Trial counsel could have reasonably concluded that re-direct examination would only attract unnecessary attention to the portion of Watson's cross-examination recounted above or even cause the jury to think that Watson's counsel was concerned that the testimony was more incriminatory that it actually was.

Given the deference owed to an attorney's strategic trial decisions, we cannot say that Holt's failure to rehabilitate Watson concerning the testimony discussed above constituted deficient performance.

### E. Cumulative Errors

Finally, Watson argues that even if none of the individual errors alleged constituted ineffective assistance, the totality of errors made by Holt entitles Watson to a successful ineffective assistance claim. Indeed, "while each error of counsel individually may not be sufficient to prove ineffective representation, an accumulation of such failures may amount to ineffective assistance." Smith v. State, 511 N.E.2d 1042, 1046 (Ind. 1987) (citation omitted).

However, as discussed above, any instance of deficient performance by trial counsel resulted only in a failure to admit cumulative evidence at trial. We cannot conclude that the combined effect of failing to submit cumulative evidence at trial amounts to ineffective assistance of trial counsel.

### III. Assistance of Appellate Counsel

Lastly, Watson contends that he received ineffective assistance of appellate counsel. Specifically, Watson believes that appellate counsel was ineffective for failing to argue the trial

court's sanction excluding witnesses was an abuse of discretion because it was unrelated to the original purpose of the trial court's protective order. By contrast, appellate counsel argued on direct appeal that the sanction was unduly punitive.

As our supreme court has pointed out, there are three basic categories of alleged appellate counsel ineffectiveness: (1) denying access to an appeal; (2) failure to raise an issue on appeal; or (3) failure to adequately present an issue despite raising the issue on appeal. Bieghler v. State, 690 N.E.2d 188, 193-95 (Ind. 1997), cert. denied, 525 U.S. 1021 (1998). Watson's argument falls under the third category. "[A]n ineffectiveness challenge resting on counsel's presentation of a claim must overcome the strongest presumption of adequate assistance. . . . Relief is only appropriate when the appellate court is confident it would have ruled differently." Id. at 196. On direct appeal, this court held that the trial court's sanction was not an abuse of discretion, applying the framework from Wisehart v. State, 491 N.E.2d 985 (Ind. 1986) in deciding whether the "most extreme sanction of witness exclusion" was appropriate. See Watson, No. 29A04-0904-CR-221, slip op. at 4-5. We have no reason to believe the court would have held differently had the issue been framed as Watson now desires. Because appellate counsel's presentation of issues on appeal is entitled to strong deference and because we are not confident that this court would have ruled differently on direct appeal, we cannot say appellate counsel was ineffective.

Conclusion

Concluding Watson's right to effective assistance of counsel was not violated at either the trial or appellate level, we affirm.

Affirmed.

RILEY, J., and KIRSCH, J., concur.