# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2017, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Otha S. Hamilton
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Otha S. Hamilton,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | December 5, 2017<br><br>Court of Appeals Case No.<br>49A02-1702-PC-279<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>The Honorable Anne Flannelly, Magistrate<br><br>Trial Court Cause No.<br>49G04-1004-PC-029545 |

**Najam, Judge.**

# Statement of the Case

Otha Hamilton appeals from the post-conviction court's denial of his petition for post-conviction relief. Hamilton raises four issues for our review:

1. Whether he was denied the effective assistance of trial counsel.

2. Whether he was denied the effective assistance of appellate counsel.

3. Whether the post-conviction court abused its discretion when it excluded certain evidence.

4. Whether the post-conviction court erred when it adopted the State's proposed findings of fact and conclusions of law.

We affirm.

# Facts and Procedural History

The facts underlying Hamilton's convictions were stated by our Supreme Court on direct appeal:

> Forty-four-year-old Otha S. Hamilton resided in Indianapolis with his wife, who had twelve grandchildren, none of them by a child of Hamilton. Several of the grandchildren would regularly visit at any given time, usually on the weekends.
>
> Sometime between October and December 2009, one grandchild, nine-year-old T.M., stayed overnight at her grandmother's house so her grandmother could take her to a dentist appointment the next morning. No other grandchildren were present. After arriving, T.M. watched television and had dinner that evening.

She later went downstairs to the basement to play pool with Hamilton, her step-grandfather.

After T.M.'s grandmother had gone to bed, Hamilton and T.M. continued playing pool. Hamilton then told T.M. to smoke a cigarette and to drink some of his beer. He then told T.M. to go with him upstairs and outside to the unattached garage because he had something he wanted to give her.

In the garage, Hamilton told T.M. to perform oral sex on him. At first, T.M. refused, but Hamilton told T.M. that he would hurt her grandmother if she did not. (Tr. at 36.) Hamilton pushed T.M. to her knees and then pushed her head down. (Tr. at 31-32.) Hamilton's penis was in T.M.'s mouth for about ten minutes before he ejaculated, causing T.M. to vomit on the table and the floor. (Tr. at 37-38.) T.M. went back inside the house and did not tell anyone right away about the incident.

The incident first came to light about five or six months later. The State charged Hamilton with one count of molesting a child, as a class A felony. Ind. Code § 35-42-4-3(a) (2008).

* * *

[A jury found Hamilton guilty as charged. The trial court imposed judgment of conviction and] imposed the maximum sentence of fifty years executed time. As a credit-restricted felon assigned to Class IV, Hamilton would therefore have to serve roughly forty-three years in prison instead of the customary twenty-five. Ind. Code §§ 35-1-1-5.5(1), 35-50-6-3, -4 (2008).

Hamilton appealed, arguing that the evidence was insufficient to support a conviction, and that a sentence of fifty years was inappropriate given the nature of his offense and his character. The Court of Appeals affirmed the conviction and found that the sentence was appropriate, but Judge Brown dissented as to the

sentence. *Hamilton v. State*, 949 N.E.2d 885 (Ind. Ct. App. 2011) (table).

*Hamilton v. State*, 955 N.E.2d 723, 724-25 (Ind. 2011) ("*Hamilton I*"). On transfer, our Supreme Court summarily affirmed our disposition of Hamilton's unsuccessful challenge to the sufficiency of evidence, but the court revised his sentence from fifty years to thirty-five years.

[4] Thereafter, Hamilton filed a petition for post-conviction relief and alleged that he was denied the effective assistance of both trial and appellate counsel. Following an evidentiary hearing, the post-conviction court entered detailed findings of fact and conclusions of law denying his petition for relief. This appeal ensued.

## Discussion and Decision

[5] Hamilton appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review is clear:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-

Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).

### *Issue One: Effectiveness of Trial Counsel*

[6] Hamilton first contends that he received ineffective assistance from his trial counsel, Ben Jaffe.

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274.

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002) (citations omitted).

[7] Hamilton alleges that Jaffe committed four errors, namely: he failed to investigate Hamilton's alleged erectile dysfunction; he stipulated to the introduction into evidence of T.M.'s videotaped out-of-court statement; he failed to impeach T.M.; and he "failed to bring the State's case to meaningful adversarial tests." Appellant's Br. at 20. We address each contention in turn.

### *Investigation*

[8] Hamilton first contends that Jaffe's performance was deficient because counsel did not investigate Hamilton's history of erectile dysfunction or obtain medical records that, Hamilton alleges, would have shown that he suffers from that condition. Hamilton maintains that those medical records would have undermined T.M.'s testimony that Hamilton had an erection and had ejaculated in her mouth.

[9] The post-conviction court concluded that Jaffe's performance "was not deficient for using his reasonable professional judgment in deciding that obtaining medical records was unnecessary when Hamilton's wife was going to testify to the same information which the medical records would have

provided." Appellant's App. Vol. 3 at 12. As the court observed, Jaffe "did elicit detailed testimony from [Hamilton's wife] on this issue" and "argued this issue as part of the defense in closing argument." *Id.* In any event, Hamilton did not submit to the post-conviction court any of his medical records to show what an investigation into the records might have uncovered. Indeed, there is no evidence that any such medical records exist. Hamilton has not shown either deficient performance or prejudice on this issue.

*T.M.'s Statement*

[10] Hamilton next contends that Jaffe was "ineffective for stipulating to the State's use of T.M.'s out[-]of[-]court statement" during trial. Appellant's Br. at 17. He maintains that he was unfairly prejudiced by the trial court's admission of T.M.'s out-of-court statement because the statement was "cumulative evidence" in light of her in-person testimony during trial. *Id.* at 16. Hamilton also asserts that he was prejudiced because the jury was likely to have viewed the out-of-court statement as "substantial evidence" because the trial court did not instruct the jury that it should have been "used to judge the witness's credibility only." *Id.* at 17.

[11] The post-conviction court concluded that Jaffe's decision to stipulate to the admission of T.M.'s out-of-court statement constituted reasonable trial strategy. Indeed, Jaffe testified at the hearing on Hamilton's post-conviction petition that, "if he [had] decided to play the DVD [of T.M.'s out-of-court statement] for impeachment reasons, it would have been because doing so was more forceful for the jury to actually see the victim making the inconsistent statement" and he

"would not have worried if some negative facts were repeated in the process of bringing out inconsistencies or a different story being told by the victim because the jury ha[d] already heard the bad stuff but what [was] important [was] for them to hear the conflicting testimony." Appellant's App. Vol. 3 at 14. In other words, Jaffe did not merely acquiesce to the use of the videotaped statement at trial, but he had a strategy to use the statement to emphasize T.M.'s inconsistent statements for the jury. We cannot say that the post-conviction court erred when it concluded that Jaffe's performance was not deficient in this regard.

### Impeachment

[12] Hamilton contends that Jaffe did not make any effort to impeach T.M. In particular, he maintains that Jaffe "failed to challenge T.M. with any facts, evidence, or testimony." Appellant's Br. at 19. We cannot agree. First, Jaffe's cross-examination of T.M. encompasses twenty-four pages of the trial transcript and shows that he challenged her on several issues, including why she did not tell someone about the molestation sooner than she did. And, second, as the post-conviction court noted, Jaffe attacked T.M.'s credibility during his closing argument by pointing out the inconsistencies between T.M.'s out-of-court statement and her trial testimony. As our Supreme Court has stated, "the method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance." *Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010). We hold that the post-conviction court did not err when it concluded that Jaffe was not ineffective in his impeachment of T.M.

*"Meaningful Adversarial Tests"*

[13] Hamilton next contends that, "in addition to the aforementioned issues, Mr. Jaffe has further failed to entirely subject the State's case to meaningful and adversarial testing." Appellant's Br. at 20. In support of that contention, Hamilton cites *United States v. Cronic*, 466 U.S. 648 (1984). As our Supreme Court explained in *Conner v. State*, 711 N.E.2d 1238, 1254 (Ind. 1999),

> *Cronic* established, in effect, a narrow exception to the two-pronged *Strickland* test, which requires defendants to demonstrate specific errors of counsel leading to deficient performance and actual prejudice in order to obtain reversal on ineffective assistance of counsel grounds. In *Cronic*, the U.S. Supreme Court rejected a claim of ineffective assistance of counsel but did suggest that, in *limited circumstances of extreme magnitude*, "a presumption of ineffectiveness" may be justified and that such circumstances are, in and of themselves, "sufficient [to establish a claim of ineffective assistance] without inquiry into counsel's actual performance at trial." *Cronic*, 466 U.S. at 662, 104 S. Ct. at 2048, 80 L.Ed.2d at 670. If the *Cronic* exception does not apply, the defendant must fulfill the individualized requirements of *Strickland*. *See id.* at 659 n.26, 104 S. Ct. at 2047 n.26, 80 L.Ed.2d at 668 n.26.
>
> The *Cronic* Court identified three situations that would justify this presumption: (1) when counsel is completely denied; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when surrounding circumstances are such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60, 104 S. Ct. at 2047, 80 L.Ed.2d at 668. The *Cronic* Court further

explained that "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Id.* at 662, 104 S. Ct. at 2048, 80 L.Ed.2d at 670.

(Emphasis added).

[14] Hamilton asserts that he is entitled to a presumption that Jaffe was ineffective because he "fail[ed] to provide any type of foundation in regards to Hamilton's defense [and] failed to instruct the jury as to the law governing Hamilton's case." Appellant's Br. at 20. Hamilton then reiterates his contention that Jaffe should not have stipulated to the admission of T.M.'s out-of-court statement. And Hamilton states that Jaffe "struggled with the law governing Hamilton's case" and cites two pages in the transcript as proof that the trial court "needed to help and assist him" and that Jaffe "admitted on record that he needed to review the rules." *Id.*

[15] Hamilton has not demonstrated that these alleged deficiencies warrant the application of the *Cronic* presumption, which, again, is reserved for cases involving "limited circumstances of extreme magnitude." *See Conner*, 711 N.E.2d at 1254. We hold that the post-conviction court did not err when it concluded that Hamilton was not denied the effective assistance of trial counsel.

### Issue Two: Effectiveness of Appellate Counsel

[16] Hamilton also contends that he was denied the effective assistance of appellate counsel when his attorney, Mark Small, failed to raise on direct appeal the issue of the State's use of posters during closing argument. In particular, Hamilton

alleges that, during closing argument, the prosecutor showed to the jury "poster exhibits" that "contained the *Ludy[ v. State*, 784 N.E.2d 459 (Ind. 2003)] instruction[1] . . . and Appellate Case Cites that supports [sic] that instruction as the law in the state of Indiana." Appellant's Br. at 10. Hamilton maintains that, had Small sought reversal of his conviction based on the "publication" of those posters to the jury, we would have reversed Hamilton's conviction on appeal. We cannot agree.

[17] Our Supreme Court has held that "[i]neffectiveness is very rarely found" where a defendant alleges deficient performance based on appellant counsel's failure to raise an issue on direct appeal. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997) (quotations and alteration omitted).

> One reason for this is that "the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." [Lissa Griffin, The Right to Effective Assistance of Appellate Counsel, 97 W. Va. L. Rev. 1, 25 (1994)]. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). As Justice Jackson noted,
>
> > "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is

---

[1] In *Ludy*, our Supreme Court held that the trial court erred when it instructed the jury that a conviction "may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." 784 N.E.2d at 462.

habitually receptive to the suggestion that a lower
court committed an error. But receptiveness declines
as the number of assigned errors increases.
Multiplicity hints at lack of confidence in any
one. . . . [E]xperience on the bench convinces me
that multiplying assignments of error will dilute and
weaken a good case and will not save a bad one."

Id. at 752, 103 S. Ct. at 3313 (quoting Justice Robert H. Jackson,
Advocacy Before the United States Supreme Court, 25 Temple
L.Q. 115, 119 (1951)). Accordingly, when assessing these types
of ineffectiveness claims, reviewing courts should be particularly
deferential to counsel's strategic decision to exclude certain issues
in favor of others, unless such a decision was *unquestionably
unreasonable*. *See Smith v. Murray*, 477 U.S. 527, 535-36, 106 S.
Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

Id. at 193-94 (emphasis added).

[18] Here, the post-conviction court found and concluded in relevant part as follows:

Firstly, this Court notes that Mr. Jaffe voiced a preliminary
objection only, prior to the commencement of closing arguments
and outside the presence of the jury, regarding a poster with
"a bunch of cases" on it which the State was possibly going to
show in its closing argument. *See* [Tr. at] 263. According to the
transcript, the State then showed the poster to the judge, and
both sides presented argument with the State acknowledging that
an instruction regarding the uncorroborated testimony of a single
eyewitness could not be given anymore. *See* [*id.* at] 263-65. In
refusing Mr. Jaffe's request to prohibit the State's use of the
poster in its closing argument, the trial court stated:

Well, while I understand your objection to the use of
that, you know, both parties are equally allowed to
explain the law, talk about the law, discuss the law

and I wouldn't abridge that. I understand your objection to it but you very clearly and succinctly articulated why . . . the effect of those should be mitigated so, I think you're well able to do it in your argument too. . . . So, while I know the State has a choice of when to do it, if that's a new thing that comes up in closing as opposed to summation, it could trigger surrebuttal, just— okay, just having said that. All right. Are we ready for the jurors?

[*Id.* at] 265. Thus, the trial court did, in substance, rule on Mr. Jaffe's preliminary objection.

Thereafter, the record further shows that in the State's rebuttal closing, the prosecutor mentioned "a list of cases when a child came into court and testified and a jury believed that child and the Defendant was convicted and that law was upheld." [Tr. at] 299. In this argument[,] which comprised a relatively small portion of the State's closing, the deputy prosecutor also stated, "This standard does not tell you, oh, you have a child victim and you have to convict. That's not what it does. It tells you that when you go back to deliberate, if you're sitting there going, well, I believe her, that's enough." *Id.* The record reflects no objection by trial counsel to this line of argument during the State's closing, and the record of proceedings includes no list of cases or photograph of any demonstrative exhibit listing cases.

Appellate counsel will not be deemed ineffective for failing to present meritless claims. *Vaughn v. State*, 559 N.E.2d 610, 615 (Ind. 1990)), *trans. denied*. Firstly, the court did rule on trial counsel's preliminary objection to the State's poster, *see* [tr. at] 265; therefore, raising on appeal that the court erred by failing to rule on Mr. Jaffe's objection would have been without merit. Secondly, there is no exhibit listing cases, or photograph of such an exhibit, in the record of proceedings; therefore, petitioner has not proven this was a significant and obvious issue or that such an issue had any chance of success on appeal given that the it is

not clear from the record whether such a demonstrative exhibit was actually shown to the jury or, if it was, what was written on the exhibit. Given the wording of the State's rebuttal at [page] 299[ of the transcript], it is possible that the deputy prosecutor had a list in her hand but did not show it to the jury. Thirdly, given that there was no contemporaneous objection . . . , Mr. Small could only have challenged the State's argument as fundamental error. "The fundamental error exception to the waiver rule is an extremely narrow one." *Munford v. State*, 923 N.E.2d 11, 13 (Ind. Ct. App. 2010). The Indiana Supreme Court has repeatedly stated that, for a mistake to constitute fundamental error, it must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *See Winegeart v. State*, 665 N.E.2d 893, 896 (Ind. 1996). Mr. Small found nothing in the State's closing argument . . . to be objectionable or in violation of *Ludy*.[]

Mr. Small's performance was not deficient, as it was not unquestionably unreasonable for him to not include such a claim. Nor was Hamilton prejudiced by appellate counsel's decision not to challenge the trial court's ruling on the preliminary objection and/or to challenge the State's closing argument at [page] 299[ of the transcript]. Mr. Small selected worthwhile claims on appeal and pursued transfer which resulted in Hamilton's fifty-year sentence being reduced to thirty-five years. Petitioner's claim of ineffective assistance of appellate counsel fails.

Appellant's App. Vol. 3 at 17-19.

[19]     On appeal, Hamilton does not direct us to any part of the record to contradict the post-conviction court's conclusion that the trial record does not contain proof that the State "published" posters related to the forbidden *Ludy* instruction during closing argument. And Hamilton has not demonstrated that Small would have been successful had he argued fundamental error on this

issue. We cannot say that Small's strategic choice of issues to raise on direct appeal was "unquestionably unreasonable." *See Bieghler*, 690 N.E.2d at 194. The post-conviction court's reasoning is sound, and we hold that the post-conviction court did not err when it concluded that Hamilton was not denied the effective assistance of appellate counsel.

### Issue Three: Abuse of Discretion

[20] Hamilton contends that the post-conviction court abused its discretion when it excluded from evidence at the hearing on his petition an interrogatory response submitted by T.M.'s grandmother ("Grandmother"). In particular, Hamilton maintains that the excluded evidence showed that Grandmother "believed that Hamilton's sentence should be vacated because T.M. . . . was less than truthful when she testified at Hamilton's trial." Appellant's Br. at 26. Hamilton asserts that Grandmother's interrogatory response contains this "newly found truth"[2] and "go[es] toward the weight of Hamilton's claim that trial counsel was less than effective in representing him." *Id.* at 27. We cannot agree.

[21] We review the post-conviction court's decision to admit or exclude evidence for an abuse of discretion. *See Rondon v. State*, 711 N.E.2d 506, 516 (Ind. 1999). We agree with the State that Grandmother's opinion of T.M.'s truthfulness is irrelevant to Hamilton's claims in his petition for post-conviction relief. On

---

[2] Hamilton makes no contention that this evidence constitutes "newly discovered evidence" to warrant a new trial. *See Taylor v. State*, 840 N.E.2d 324, 329-30 (Ind. 2006).

appeal, Hamilton makes only a vague assertion that the evidence would have helped his claim of ineffective assistance of trial counsel. As the State correctly points out, Jaffe would have been prohibited from eliciting such testimony from Grandmother at trial because a witness may not testify to "the truth or falsity of allegations" or "whether a witness has testified truthfully[.]" Ind. Evidence Rule 704(b). And Hamilton has not explained how the evidence would have otherwise supported his claim of ineffective assistance of trial counsel. We cannot say that the post-conviction court abused its discretion when it excluded the proffered evidence at the post-conviction hearing.

### Issue Four: Findings and Conclusions

[22] Finally, Hamilton contends that the post-conviction court erred when it adopted, "virtually verbatim," the State's proposed findings of fact and conclusions of law. Appellant's Br. at 28. In essence, Hamilton asserts that the post-conviction court did not have sufficient time to review his "response" to the State's proposed findings of fact and conclusions of law, which was filed the same day that the court issued its order. Hamilton maintains that, if the post-conviction court had "reviewed" and "considered" his proposed findings of fact and conclusions of law, the court would have granted his petition. *Id.* at 29. We cannot agree.

[23] As our Supreme Court has observed, "[i]t is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party." *Prowell v. State*, 741 N.E.2d 704, 708 (Ind. 2001). And Indiana courts are not prohibited from this practice. *See id.* at 709. Here, to the extent

Hamilton asserts that the post-conviction court was required to *review* and *consider* his proposed findings of fact and conclusions of law, he does not support that contention with citation to authority. Moreover, to the extent Hamilton contends that, had the post-conviction court taken more time to consider his proposed order it would have granted his petition, that contention is without merit. The post-conviction court's findings of fact are supported by the evidence, and the findings support the conclusions of law. Hamilton has not demonstrated error on this issue.

[24] Affirmed.

Mathias, J., and Barnes, J., concur.