## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 18 2020, 10:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Todd Leek
Michigan City, Indiana

ATTORNEY FOR APPELLEE

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Todd Leek,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 18, 2020

Court of Appeals Case No.
19A-PC-1414

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1612-PC-123

**Altice, Judge.**

# Case Summary

[1] Todd Leek appeals the denial of his petition for post-conviction relief, claiming that his trial counsel was ineffective for failing to object to the admission of evidence that allegedly violated Indiana Evid. Rule 404(b). Leek also asserts that he is entitled to relief because the post-conviction court erred in deciding the case by way of affidavit rather than conducting an evidentiary hearing.

[2] We affirm.

# Facts and Procedural History

[3] The facts, as reported in Leek's direct appeal, are as follows:

> Leek met [Mother] in 2003 and they married in 2004. [Mother] had five children, including B.L., who was four years old at the time. Leek adopted all five children. The family moved often during the next few years, sometimes in order to avoid investigation of physical abuse of one of the daughters. Leek was verbally and physically abusive toward [Mother]. When B.L was between five and eight Leek began inappropriately touching her sexually, and the inappropriate activity progressed over the next several years. B.L. did not immediately report the activity because she was afraid of Leek. In May 2013, [Mother] and the children moved out. Shortly afterward B.L. described to her mother the inappropriate touching by Leek. B.L had made similar allegations once before, while the family was traveling.

[4] *Leek v. State*, No. 02A03-1502-CR-52, *slip op.* at 2 (Ind. Ct. App. Dec. 21, 2015).

[5]     On February 27, 2014, the State charged Leek with three counts of child molesting and filed two notices indicating its intent to offer character evidence at trial under Evid. R. 404(b). One of the notices provided that the State sought to introduce evidence of past episodes of physical abuse between Leek and B.L.'s sister, H.L., and Mother. The State argued that this evidence was necessary to establish the reasons why B.L. did not report the incidents of sexual abuse at an earlier time, as well as "the nature of the relationship between the parties, the victim's state of mind, and [Leek's] guilty knowledge." *Appendix* at 48. The trial court issued an order allowing the State to offer that evidence.

[6]     At Leek's jury trial that commenced on January 6, 2015, H.L. was the first of the State's witnesses to testify, and she described various episodes of physical abuse involving Leek. H.L. testified about one occasion where Leek had "smashed [her] head against the wall." *Transcript* at 38. The State offered a photograph of a laceration near H.L.'s eye that she received during that altercation. Leek's counsel did not object, and H.L. went on to testify that after she disclosed instances of Leek's abuse to her church pastor, the family moved from Indiana to Florida because Leek wanted to avoid "getting the cops involved. . . ." *Id.* at 44.

[7]     Mother testified that while the family was living in Goshen, the police were contacted on one occasion to investigate allegations that Leek had physically abused H.L. Before the police interviewed H.L., Mother and Leek met with

her and "had a discussion . . . about what went on and what the consequences would be if it went further." *Id.* at 98. Leek and Mother instructed H.L. "to not tell [the police] everything that was going on" because "it would tear up [the] family. . . ." *Id.* Mother testified that when she confronted Leek about the altercation with H.L., he apologized and stated he "would try not to do it again." *Id.* at 119-20. Without objection from Leek's counsel, Mother testified that Leek "had a very bad temper, . . . he'd get very angry, very mad . . . in order for us to listen to him." *Id.* at 115-16. She stated that Leek's abuse included verbal insults and "[p]ushing, shoving, throwing things, [and] holding [her] down." *Id.* at 116. Mother described incidents where Leek broke her wrist and pushed her down some stairs.

[8] Mother testified that after she and Leek separated in February 2013, she petitioned for dissolution of the marriage. Mother and the children moved to Michigan, after which B.L. told her about the "inappropriate things that Leek had been doing to her" when they were living in Fort Wayne. *Id.* at 114-15. Leek was also physically violent with Mother's sons, Ja.J. and Jo.J., and Mother testified that B.L. had witnessed some of those incidents. Sometimes when B.L. and Ja.J. fought, Mother testified that Leek would "slap [B.L.] in the mouth or push her or grab her by the hair and put her in her room." *Id.* at 117.

[9] The State called B.L. as a witness after Mother and H.L. testified. B.L. recalled that she was eight years old when Leek began sexually abusing her. On that first occasion, Leek took her into his bedroom, put her under the covers, and touched her "crotch" with his hand. *Id.* at 184. B.L. testified that Leek

continued to engage in similar conduct over the years and she described incidents where Leek forced her to watch pornographic videos of "girls having . . . sex" on his phone, computer, and television set. *Id.* B.L. also described how Lee would make her "take . . . shower[s] in . . . his bathroom" and then order her "out of the shower, touch her crotch and . . . rub it with his hand." *Id.* at 184, 188. B.L. described that on several occasions, Leek forced her to touch his penis with her hands, "crotch," and mouth. *Id.* at 189-90. The incidents where Leek touched her "crotch with his crotch" and "touched [her] crotch with his mouth" involved "skin-to-skin contact." *Id.* at 192.

[10] B.L. testified that she did not initially report Leek's conduct because she "felt scared" and that "if [she] told anyone something bad would happen, [and she] wouldn't be able to undo it." *Id.* B.L. stated that she first disclosed the incidents to Mother after they had moved from Canada, but she believed that "[Mother] couldn't do anything" about the situation. *Id.* at 194-96.

[11] Leek testified in his own defense. Thereafter, the jury found Leek guilty as charged and the trial court sentenced him to an aggregate term of eighty years of incarceration.

[12] This court affirmed Leek's convictions and sentence on direct appeal. On November 7, 2018, Leek filed an amended petition for post-conviction relief, claiming that his trial counsel was ineffective for failing to object to "evidence and argument regarding the violent history between the petitioner and [H.L.]

and to the "drum beat of witnesses and evidence." *P.C.R. Appendix Vol. II* at 26.

[13] Upon motion by the State, the post-conviction court ordered the cause submitted by affidavit on July 17, 2018. Leek filed a motion for an evidentiary hearing and a request for a subpoena for his trial counsel to testify, both of which the post-conviction court denied. Leek then filed an affidavit in support his petition for post-conviction relief on December 13, 2018, and both parties subsequently tendered proposed findings of fact and conclusions of law. On May 24, 2019, the post-conviction court entered findings and of fact and conclusions of law, denying Leek's request for relief as follows:

> 3. Mr. Leek identifies no instance in which any witness expressed an opinion that B.L. was testifying truthfully, and the Court's review of the record has disclosed none. Attorney Linsky cannot be found ineffective for failing to object to nonexistent vouching testimony. *Sanchez v. State*, 675 N.E.2d 306, 310 (Ind. 1996) (a defendant cannot prove that counsel's failure to raise an objection constituted inadequate representation without showing that, had the objection been made, "the court would have had no choice but to sustain it"); *Vaughn v. State*, 559 N.E.2d 610, 615 (Ind. 1990) (counsel will not be deemed ineffective for failing to present a meritless claim).

> 4. Even if there is no expression of opinion as to whether a witness has testified truthfully, a "drumbeat repetition" of an alleged victim's statements about the charged offense, before the alleged victim testifies and is subject to cross examination, may warrant reversal of a conviction. *Modesitt v. State*, 578 N.E.2d 649, 654 (Ind. 1991). In the present case, no witnesses related any of B.L.'s allegations before she testified. . . . Attorney Linsky

cannot be found ineffective for failing to complain about a nonexistent "drumbeat repetition" of B.L.'s allegations. *Sanchez*, 675 N.E.2d at 3 10 (Ind. 1996). . . .

5. A fairly large amount of the evidence at trial was not directly relevant to the charged offenses nor to Mr. Leek's defense, but rather concerned matters such as [H.L.'s] bad relationship with Mr. Leek, the family's frequent moves, and revealing outfits worn by [H.L.] and B.L. Mr. Leek asserts that attorney Linsky was ineffective in failing to raise adequate objections to such evidence. It is not necessary to determine whether attorney Linsky's performance was deficient in this regard, because Mr. Leek's defense did not suffer prejudice as a result. *Bouye*, 699 N.E.2d at 623. For the following reasons, there is no reasonable probability that the outcome of Mr. Leek's trial would have been different even if attorney Linsky had successfully objected to all of the evidence that was not directly relevant. . . .

6. B.L.'s highly detailed account of events . . . gave no obvious indication of having been fabricated or coerced, to say the least. Her account was partially corroborated by [the other three children]. All three of these witnesses testified that Mr. Leek and B.L. had repeatedly been in Mr. Leek's bedroom with the door closed or locked, and that Mr. Leek showed favoritism to B.L. by giving her more gifts than the others received, consistent with B.L.'s own testimony that Mr. Leek gave her gifts in return for touching. . . . Ja.J. and Jo.J. also testified that they had seen inappropriate videos displayed on devices when Mr. Leek and B.L. were together in Mr. Leek's bedroom, consistent with B.L.'s testimony that Mr. Leek showed her such material and had her do the things depicted.

. . .

9. Mr. Leek's own testimony. . . was not credible on crucial points.

10. For the foregoing reasons, all arising solely from the evidence that would have remained if all evidence not directly relevant to the charges or the defense had been excluded, it is evident that there is hardly a conceivable possibility—much less a reasonable probability—that Mr. Leek would have been acquitted even if all such evidence had been excluded. B.L.'s detailed testimony was credible and partially corroborated, and there was no indication that it was either fabricated or coerced, much less both. Mr. Leek's defense was completely incredible for multiple reasons. . . . As Mr. Leek's defense did not suffer prejudice as a result of attorney Linsky's failure to exclude evidence not directly relevant, his claim of ineffectiveness on this basis must fail. . . .

*P.C.R. Appellant's Appendix Vol. II* at 54-66. Leek now appeals.

# Discussion and Decision

## I. Standard of Review

[14] Our standard of review in post-conviction proceedings is well-settled:

[P]ost-conviction proceedings do not grant a petitioner a 'super-appeal' but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was

denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Jent v. State*, 120 N.E.3d 290, 92-93 (Ind. Ct. App. 2019) (quoting *Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal citations omitted), *trans. denied.*

## II. Leek's Claims

### A. Ineffective Assistance of Trial Counsel

Leek argues that he is entitled to post-conviction relief because his trial counsel was ineffective for failing to object to the testimony of Mother, H.L., and B.L. that Leek had physically and mentally abused them over the years. Leek claims that the admission of that testimony violated the prohibitions set forth in Evid. R. 404(b)(1) and amounted to a prejudicial "drumbeat" of evidence to the jurors. *See Appellant's Brief* at 4.[1]

---

[1] We note that Leek challenged the admissibility of character evidence on direct appeal. Because his trial counsel did not lodge a timely objection to the admission of that evidence, a panel of this court discussed the doctrine of waiver and decided the issue under the theory of fundamental error. It was determined that no fundamental error resulted because the "evidence was offered to show why B.L. had been reluctant to report Leek's behavior sooner, and it was evidence relevant to a matter at issue other than the defendant's propensity to commit the charged act. . . ." *Leek, slip op.* at 5. In light of that determination and for the reasons discussed below, it follows that Leek's trial counsel cannot be held to have rendered deficient performance for not objecting to the admission of that same evidence.

[16] We initially observe that there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCullough v. State,* 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied.* Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. *Pennycuff v. State*, 745 N.E.2d 804, 811 (Ind. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)). Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Id.* When considering ineffectiveness assistance of counsel claims, we "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* For ineffective assistance claims based on a failure to object, the defendant must show that, if defense counsel had made the objection, the trial court "would have had no choice but to sustain it." *Taylor v. State*, 929 N.E.2d 912, 917 (Ind. Ct. App. 2010), *trans. denied.*

[17] Reversal is appropriate where a defendant shows both that counsel's performance fell below an objective standard of reasonableness *and* that said deficient performance so prejudiced the defendant as to deprive him of a fair trial. *See Talley v. State,* 736 N.E.2d 766, 769 (Ind. Ct. App. 2000). These two prongs are separate and independent inquires. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert denied*, 135 S.Ct. 2376 (2015). Thus, if "it is easier to dispose of an ineffectiveness claim on one of the grounds

instead of the other, that course should be followed." *Talley,* 736 N.E.2d at 769.

[18] In addressing Leek's claims, we note that Evid. R. 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[2] The purpose of this rule is to prevent a fact finder from making the "forbidden inference" that prior wrongful conduct suggests present guilt for a charged offense. *Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013). Rule 404(b) is inclusive rather than exclusive, and evidence of a defendant's uncharged bad acts may be admissible when offered for a purpose other than showing "bad character or conformity therewith." *Lay v. State*, 659 N.E.2d 1005, 1010 n.5 (Ind. 1995). To that end, Evid. R. 404(b)(2) provides a non-exhaustive list of permitted uses for evidence of prior bad acts, which includes "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See Wilcoxson v. State,* 132 N.E.3d 27, 31 (Ind. Ct. App. 2019), *trans. denied*.

[19] The focus of Leek's defense was that H.L. and B.L. were unreliable witnesses because Leek unfairly disciplined them, and they were able to assert control by complaining to various authorities about his conduct. Leek also maintained

---

[2] When Leek was charged with the offenses, the text of Evid. R. 404 provided that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but may "be admissible for other purposes, such as proof of motive."

that Mother fabricated various allegations against him because of the contentious divorce. Leek's counsel asserted during the opening statement that

> there were times in the years of the relationship that [Leek] does take it out on the children, and yes, he is the disciplinarian of the household. . . . Sometimes the person who is the disciplinarian is not that child's favorite person. The children also are not fond of the efforts (inaudible words). [Leek] does . . . believe in physical restraint and physical discipline of the children. [Leek] saw how the children disrespected and acted towards their mother. And that's when he engaged in discipline. As time went on, the children realized that they could contact the authorities, contact child protective services and gain some control. Their mother, their step-father, their mother particularly became afraid. She didn't want the police involvement, she didn't want the child protective services involvement, so she said let's move. The children knew of this fear and would use it against their mother. The children made accusations and then changed their stories.

*Transcript Vol. I* at 30.

[20] The testimony elicited from Mother, H.L., and B.L. revealed Leek's pattern of instilling fear and intimidating them into not reporting his conduct to the police and other authorities. Moreover, the evidence established that Leek engaged in violent and threatening behavior to induce silence from Mother, H.L., and B.L., and it showed B.L.'s state of mind and her fear of Leek as a reason for not disclosing the sexual abuse at an earlier date.

[21] In sum, it is apparent that the State did not offer the domestic violence and emotional abuse evidence for the purpose of establishing that Leek had the propensity to commit the offense of child molesting that Evid. R. 404(b) would

preclude. *See Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009) (holding that when Evid. R. 404(b) is at issue, courts must consider whether evidence of other crimes is relevant to a matter other than the defendant's propensity to commit the charged act), *reh'g denied*. Rather, the challenged evidence was offered for the purposes discussed above, none of which violated Evid. R. 404(b). Thus, Leek has failed to show that an objection to this evidence by trial counsel would have been sustained, had one been made.

[22] In a related argument, Leek contends that he is entitled to post-conviction relief because his trial counsel did not object to the "drumbeat of witness bad character evidence." *Appellant's Brief* at 46. The danger of "drumbeat repetition" testimony arises when trial courts permit multiple witnesses to relay out-of-court statements by a victim before that victim is allowed the chance to testify. *Kress v. State*, 133 N.E.3d 742, 746 (Ind. Ct. App. 2019), *trans. denied*. Ordinarily, "[t]he number of witnesses who may be called to prove a single issue of fact is within the trial court's sound discretion." *Norris v. State*, 53 N.E.3d 512, 525 (Ind. Ct. App. 2016). "However, as additional testimony about the assertion 'beats the drum,' there is increasing danger the jury will use the testimony for an improper purpose." *Kress*, 133 N.E.3d at 746. In those circumstances, testimony from multiple witnesses conveying a victim's out-of-court statements may result in prejudice to a defendant if it is so repetitive that it impermissibly bolsters the victim's credibility and dilutes the defendant's presumption of innocence. *See Modesitt v. State*, 578 N.E.2d 649, 652 (Ind.

1991); *see also Surber v. State*, 884 N.E.2d 856, 864 (Ind. Ct. App. 2008), *trans. denied.*

[23] In this case, neither Mother nor H.L. conveyed statements to the jury that B.L. had made regarding the instances of molestation. While Mother testified that B.L. had told her about Leek's conduct, she did not testify about the substance of B.L.'s disclosures. Similarly, H.L. never testified that B.L. had made allegations of sexually inappropriate conduct to her. At most, the evidence established that B.L. disclosed something to Mother about Leek's behavior that caused Mother to confront Leek. That said, the rule set forth in *Modesitt* that prohibits unfair prejudicial drumbeat repetition testimony does not bar the corroborative testimony that Mother and H.L. provided. *See e.g., McGrew v. State*, 673 N.E.2d 787, 796 (Ind. Ct. App. 1996) (rejecting the defendant's claim that testimony consistent with the victim's was impermissible drumbeat repetition evidence), *summarily aff'd* 682 N.E.2d 1289, 1292 (Ind. 1997). Thus, Leek has failed to show that his trial counsel rendered deficient performance for not objecting to the admission of H.L.'s and Mother's testimony on this basis.

[24] Finally, we note that the post-conviction court correctly observed that Leek failed to show that he was prejudiced by the admission of evidence that was "not directly relevant to the charged offenses," in light of the "overwhelming evidence establishing . . . guilt." *Appellant's Appendix Vol. II* at 63, 66. Indeed, the weight of the evidence supporting a defendant's guilt is central to the prejudice inquiry under *Strickland*. *See Bouye v. State*, 699 N.E.2d 620, 624 (Ind. 1998).

[25] In this case, B.L. testified in detail about the repeated instances of molestation, including when and where those episodes occurred. B.L.'s family members largely corroborated her account of events and they testified about Leek locking himself in his bedroom with B.L. and witnessing B.L. and Leek watching pornographic videos together on different occasions. Mother had also recorded a conversation that she had with Leek that was admitted into evidence where Leek stated, "I'm weak, yeah, and she's got a hold of me." *State's Ex.* 4, 5.

[26] Leek has made no showing that the admission of the evidence regarding his abuse hindered his ability to present a defense or compromised fairness of the trial. Leek also had the opportunity to challenge the State's Evid. Rule 404(b) notices, and his trial counsel vigorously cross-examined B.L. Hence, there is hardly a conceivable possibility—much less a reasonable probability—that Leek would have been acquitted even if the evidence that Leek complains about had been excluded. For all these reasons, Leek has failed to show that his trial counsel was ineffective.

### B. Disposition By Affidavit

[27] Leek claims that the post-conviction court erred in resolving his request for relief by affidavit rather than conducting an evidentiary hearing. Indiana Post-Conviction Rule 1(9)(b) provides that "[i]n the event petitioner elects to proceed *pro se*, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing."

[28] Ordinarily, the issue of whether to order a case submitted by affidavit is left to the sound discretion of the post-conviction court and is reviewed for an abuse of discretion. *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*. "A post-conviction court is only required to hold an evidentiary hearing after ordering a case be submitted by affidavit if (1) affidavits are, in fact, submitted, (2) either party moves for summary disposition, and (3) there is a genuine issue of material fact." *Laboa v. State*, 131 N.E.3d 660, 664 (Ind. Ct. App. 2019) (citing Post-Conviction Rule 1(4)(g)).

[29] If Leek desired an evidentiary hearing after the post-conviction court ordered the parties to submit affidavits, he was required to move for summary disposition and present a genuine issue of material fact. *Id*. Leek failed to do either. Additionally, while Leek filed a motion for the post-conviction court to issue a subpoena for his trial counsel's testimony, the court took no action on that request in light of its prior order that the case be submitted by affidavit. Absent a formal filing of a motion for summary disposition, Leek did not follow the required procedures that may have triggered a mandatory hearing. As a result, the post-conviction court was under no obligation to hold an evidentiary hearing. *See Smith*, 822 N.E.2d at 201.

[30] We also note that Leek's affidavit alleged that his trial counsel failed to object to the physical abuse and domestic violence evidence. The affidavit described various injuries that H.L. had sustained, and it recounted various aspects of the testimony from the witnesses. The State did not dispute Leek's averments. Additionally, Leek requested a subpoena for his trial counsel to testify that (1)

she was his attorney; (2) the courtroom was "being flooded with prejudicial evidence of a violent relationship" that Leek had with H.L.; and (3) counsel "objected to some of the evidence but not all of the evidence." *P.C.R. Appendix Vol. II* at 39. There is no indication in the record that Leek either attempted, or was unable to procure an affidavit from defense counsel outlining those facts. Even so, the generalized facts set forth in Leek's subpoena request were accounted for in Leek's own affidavit and were largely uncontested by the State.

[31] In light of these circumstances, we cannot say that the post-conviction court abused its discretion in denying Leek's request for an evidentiary hearing, and Leek has made no showing that he would have benefited from such a hearing had one been conducted. The post-conviction court did not err in denying Leek's request for relief.

[32] Judgment affirmed.

Bailey, J. and Crone, J., concur.